UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

LOUD RECORDS LLC, a Delaware corporation;
ARISTA RECORDS LLC, a Delaware limited
liability company; ATLANTIC RECORDING
CORPORATION, a Delaware corporation; BMG
MUSIC, a New York general partnership;
CAPITOL RECORDS, INC., a Delaware
corporation; ELEKTRA ENTERTAINMENT
GROUP INC., a Delaware corporation;
FONOVISA, INC., a California corporation;
INTERSCOPE RECORDS, a California general
partnership; LAFACE RECORDS LLC, a
Delaware limited liability company; MAVERICK
RECORDING COMPANY, a California joint
venture; MOTOWN RECORD COMPANY, L.P.,
a California limited partnership; PRIORITY
RECORDS LLC, a California limited liability
company; SONY BMG MUSIC
ENTERTAINMENT, a Delaware general
partnership; UMG RECORDINGS, INC., a
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation;
WARNER BROS. RECORDS INC., a Delaware
corporation; and ZOMBA RECORDING LLC, a
Delaware limited liability company,

                Plaintiffs,

       -against-

DOES 1 - 30,

                Defendants.

----------------------------------------------------------------- x

:
:
:
:
:
: Civil Action No.:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:



07 CIV 9291

JUDGE KEENAN

RECEIVED
OCT 17 2007
JUDGE KEENAN'S CHAMBERS

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

### I.    INTRODUCTION

       Plaintiffs, record companies who own the copyrights in the most popular sound

recordings in the United States, seek leave of the Court to serve limited, immediate discovery on

a third party Internet Service Provider ("ISP") to determine the true identities of Doe Defendants,

who are being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot

identify the Doe Defendants, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Doe Defendants, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works and/or distribute copyrighted works to the public. See Declaration of Carlos Linares ("Linares Decl."), ¶ 18 (attached hereto as Exhibit A). Although Plaintiffs do not know the true names of the Doe Defendants,[2] Plaintiffs have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of that Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 14-15, 19. Plaintiffs have downloaded a sample of several of the sound recordings each Defendant illegally distributed and have evidence of every file (at times numbering in the thousands) that each Defendant illegally distributed to the public. Id.

Plaintiffs have identified the ISP that provided Internet access to each Defendant by using a publicly available database to trace the IP address for each Defendant. Id. ¶¶ 12, 18. Here, the ISP is Columbia University ("Columbia"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant (*i.e.,* the ISP's subscriber) because that information is contained in

---

[1] Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' positions on this *Ex Parte* Application.

[2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect), Defendants typically use monikers, or user names, and not their true names. Linares Decl., ¶ 10. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 10, 16.

the ISP's subscriber activity log files. Id. ¶ 16.[3]  Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data. Id. ¶ 24.  Plaintiffs alert the ISP to the existence of the copyright claims shortly after identifying the infringing activity and ask the ISP to maintain the log files.

Plaintiffs now seek leave of the Court to serve limited, immediate discovery on Columbia to identify each Defendant.  Plaintiffs intend to serve a Rule 45 subpoena on Columbia seeking documents, including electronically-stored information, sufficient to identify each Defendant's true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. For those IP addresses that Columbia cannot link to a specific Defendant, Plaintiffs will seek all documents and electronically-stored information relating to the assignment of that IP address at the date and time the IP address was used to infringe Plaintiffs' copyrighted sound recordings. Once Plaintiffs learn a Defendant's identifying information, Plaintiffs will attempt to contact that Defendant and attempt to resolve the dispute.  If the dispute is not resolved and it is determined that it would be more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will dismiss that Defendant from the present lawsuit and re-file in the appropriate jurisdiction.  Without the ability to obtain the Doe Defendants' identifying information, however, Plaintiffs may never be able to pursue their lawsuit to protect their copyrighted works from repeated infringement. Id. ¶ 24.

---

[3] ISPs own or are assigned certain blocks or ranges of IP addresses.  A subscriber gains access to the Internet through an ISP after setting up an account with the ISP.  An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online."  After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. See Linares Decl., ¶ 16.

Moreover, the infringement may be ongoing such that immediate relief is necessary.  Thus, the

need for the limited, immediate discovery sought in this *Ex Parte* Application is critical.

## II.    BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted

works.  See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 923 (U.S. 2005).  By

downloading P2P software, and logging onto a P2P network, an individual can upload

(distribute) or download (copy), without authorization, countless copyrighted music and video

files to or from any other P2P network user worldwide.  See id. at 920 (detailing the process used

by infringers to download copyrighted works); A&M Records, Inc. v. Napster, Inc., 239 F.3d

1004, 1014 (9th Cir. 2001) (stating that infringers use P2P networks to copy and distribute

copyrighted works); Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 331

(S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001)

(describing a viral system, in which the number of infringing copies made available multiplies

rapidly as each user copying a file also becomes a distributor of that file).  Until enjoined,

Napster was the most notorious online media distribution system.  Grokster, 545 U.S. at 924.

Notwithstanding the Napster Court's decision, similar online media distribution systems

emerged that have attempted to capitalize on the growing illegal market that Napster fostered.

These include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others.

Linares Decl., ¶ 6.  Despite the continued availability of such systems, there is no dispute that the

uploading and downloading of copyrighted works without authorization is copyright

infringement.  Napster, 239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th

Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004).  Nonetheless, at any given moment, millions of

people illegally use online media distribution systems to upload or download copyrighted

material.  Linares Decl., ¶ 6.  More than 2.6 *billion* infringing music files are downloaded

monthly.  L. Grossman, *It's All Free*, Time, May 5, 2003, at 60-69.

The propagation of illegal digital copies over the Internet significantly harms

copyright owners, and has had a particularly devastating impact on the music industry.  Linares

Decl., ¶ 9.  The RIAA member companies lose significant revenues on an annual basis due to the

millions of unauthorized downloads and uploads of well-known recordings that are distributed

on P2P networks.  Id. ¶ 9.  Evidence shows that the main reason for the precipitous drop in

revenues is that individuals are downloading music illegally for free, rather than buying it.  See

In re Aimster Copyright Litig., 334 F.3d at 645.

## III.    ARGUMENT

Courts, including this circuit, routinely allow discovery to identify "Doe"

defendants.  See Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro*

*se* plaintiff should have been permitted to conduct discovery to reveal identity of the defendant);

Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed

defendants given possibility that identity could be ascertained through discovery); Dean v.

Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny the plaintiff's motion to join John

Doe defendant where identity of John Doe could have been determined through discovery);

Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because the

defendant was unnamed; "Rather than dismissing the claim, the court should have ordered

disclosure of the Officer Doe's identity"); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980)

(where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to

obtain their identity through limited discovery").

Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record companies, against Doe defendants for infringing copyrights over P2P networks, many courts, including this Court, have granted Plaintiffs' motions for leave to take expedited discovery. See, e.g., Order, Capitol Records, Inc. v. Does 1-250, No. 04 CV 472 (LAK) (S.D.N.Y. Jan. 26, 2004); Order, Sony BMG Music Ent't v. Does 1-2, Civil Action No. 5:04-cv-1253 (NAM/GHL) (N.D.N.Y. Nov. 5, 2004); Order, Virgin Records Am., Inc. v. Does 1-3, Civil Action No. 3-04-cv-701 (JCH) (D. Conn. April 29, 2004) (true and correct copies of these Orders are attached hereto as Exhibit B). This Court should not depart from its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this issue directly.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes "good cause" for such discovery. See UMG Recordings, Inc., 2006 U.S. DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a reasonableness standard); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. See Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997); Qwest Comm., 213 F.R.D. at 419 ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition."); Semitool, 208 F.R.D. at 276. This is not surprising, since such claims

necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 14.06[A], at 14-103 (2003); see also ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996); Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1034, 1042 (8th Cir. 2003); Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted).

        Second, good cause exists here because there is very real danger the ISP will not long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Linares Decl., ¶ 24. If that information is erased, Plaintiffs will have *no* ability to identify Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See Qwest Comm., 213 F.R.D. at 419; Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans" in the defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

        Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify Defendants; information

that may be erased very soon. Plaintiffs (who continue to be harmed by Defendants' copyright infringement, Linares Decl., ¶ 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known defendants with whom to confer (and thus, no conference is possible). There is no prejudice to Defendants because Plaintiffs merely seek information to identify Defendants and to serve them, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws.

Fourth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other information Plaintiffs can obtain about Defendants without discovery from the ISP. As shown by the Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits against each infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works at issue, and that Defendants copied or distributed those copyrighted works without Plaintiffs' authorization. See Complaint. These allegations state a claim of copyright infringement. Nimmer On Copyright § 31.01, at 31-3 to 31-7; Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In addition, Plaintiffs have copies of a sample of several of the sound recordings that each Defendant illegally distributed to the public and have evidence of every file that each Defendant illegally distributed to the public. See Complaint Ex. A; Linares Decl., ¶¶ 18-19. These more complete lists often show thousands of files, many of them sound recordings (MP3 files) that are owned by, or exclusively licensed to, Plaintiffs. See Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the sound recordings

have been downloaded and/or distributed to the public without permission or consent of the respective copyright holders. Id. Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

Finally, Plaintiffs request that the Court make clear that Columbia's response to the subpoena is consistent with its obligations under the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g ( "FERPA"). Though FERPA generally prohibits disclosure of certain records by federally-funded educational institutions, it *expressly* provides that information can be disclosed pursuant to court order. *See* 20 U.S.C. § 1232g(b)(2)(B). While Plaintiffs do not believe FERPA prevents the disclosure of the information requested in the subpoena,[4] universities and colleges have expressed concern about their obligations under FERPA, and some have taken the position that a court order is required before they will disclose subscriber information. Hence, Plaintiffs seek an appropriate order explicitly authorizing Columbia to comply with the subpoena.

If the Court grants this Ex Parte Application, Plaintiffs will serve a subpoena on Columbia requesting documents that identify the true names and other information about Defendants within 15 business days. Columbia then will be able to notify its subscribers that this information is being sought, and each Defendant will be able to raise any objections before this Court in the form of a motion to quash prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

---

[4] Plaintiffs do not concede that FERPA prevents Columbia University, from disclosing the type of information being requested by Plaintiffs, but believe that a properly framed court order will make resolution of that issue unnecessary.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the *Ex Parte* Application and

enter an Order substantially in the form of the attached Proposed Order.


Dated: New York, New York
       October 17, 2007

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   Brian E. Moran (BM-8573)
   Richard J. Guida (RG-5147)
   Robinson & Cole LLP
   885 Third Avenue, Suite 2800
   New York, NY 10022-4834
   Telephone: (212) 451-2900
   Fax: (212) 451-2999